UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CELLULOSE MATERIAL SOLUTIONS, LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>SC MARKETING GROUP, INC.,<br><br>   Defendant. | Case No. 22-cv-03141-LB<br><br>**ORDER**<br><br>Re: ECF Nos. 61, 63, 73, 78 |

**INTRODUCTION**

Plaintiff Cellulose Material Solutions claims that defendant SC Marketing Group infringes a patent for packaging insulation that keeps the package contents — for example, meal kits with food items — cool and fresh without the need for refrigerant packs. The patent is U.S. Patent No. 11,078,007 (the '007 patent). The parties are competitors.[1] Cellulose's insulation product is called InfinityCore, and SC Marketing's product is called Renewliner.[2]

There are four pending disputes: SC Marketing moved for leave to file an amended answer and amended invalidity contentions, Cellulose moved to amend the scheduling order, and the parties

---

[1] Compl. – ECF No. 1 at 1–2 (¶ 1), 4 (¶ 16), 6 (¶ 30); U.S. Patent No. 11,078,007 (filed June 27, 2016) – ECF No. 1-1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and sometimes also to the page numbers at the bottom of documents.

[2] Compl. – ECF No. 1 at 2 (¶ 2), 3 (¶ 15). The complaint capitalizes the names.

ORDER – No. 22-cv-03141-LB

dispute the sufficiency of some of SC Marketing's discovery responses.[3] The court grants the requested amendments and orders the discovery.

## STATEMENT

Cellulose "is a leading manufacturer of various insulation products."[4] Its InfinityCore products "are effective at insulating package contents to maintain temperatures so as to preserve the freshness, and prevent[] spoilage, of perishable items. This reduces or even eliminates the need for utilizing the refrigerant packs that are commonplace with conventional insulated packaging materials."[5] Cellulose has "realized commercial success" with these products.[6]

SC Marketing "approached [Cellulose] a number of years ago, inquiring about some of [Cellulose]'s products at the time. In the course of the ensuing relationship between the parties, [Cellulose] made a confidential disclosure to [SC Marketing] of the product that ultimately became the [InfinityCore] product."[7] SC Marketing alleges (in its answer) that the parties were collaborating during the relevant time period, they discussed "joint[ly] filing" to protect their inventions, and SC Marketing President Sal Cardinale should have been included as a named inventor on the '007 patent.[8] Since the time of the parties' collaboration, SC Marketing began selling its own packaging-insulation product, the Renewliner.[9] Cellulose alleges that the Renewliner infringes the '007 patent.[10]

---

[3] Mots. – ECF Nos. 61, 63, 73; Joint Disc. Letter Br. – ECF No. 78.

[4] Compl. – ECF No. 1 at 3 (¶ 14).

[5] *Id.* at 4 (¶ 16).

[6] *Id.* (¶ 17).

[7] *Id.* at 5 (¶ 23).

[8] Answer – ECF No. 13 at 9–10 (¶ 27).

[9] Compl. – ECF No. 1 at 5 (¶ 24).

[10] *Id.* at 6 (¶ 27).

ORDER – No. 22-cv-03141-LB            2

In its current answer, SC Marketing generally denies the allegations but admits that it sells the Renewliner.[11] It asserts invalidity as an affirmative defense and counterclaims for declaratory relief and correction of inventorship.[12]

The existing scheduling order sets forth various deadlines: SC Marketing's invalidity contentions were due on December 5, 2022; the last day to seek leave to amend the pleadings was June 26, 2023; and fact discovery closes on August 15, 2023.[13] The parties have already completed claim-construction discovery and briefing, and the court construed the disputed claim terms.[14]

The court has federal-question jurisdiction. 28 U.S.C. §§ 1331, 1338. All parties consented to magistrate-judge jurisdiction.[15] *Id.* § 636(c). The court held a hearing on August 10, 2023.

## ANALYSIS

The court resolves the four pending disputes in turn.

**1. SC Marketing's Motion for Leave to File an Amended Answer**

SC Marketing moves for leave to amend its answer to assert additional counterclaims for conversion, unjust enrichment, unfair competition, and intentional interference with prospective economic advantage.[16] Characterizing the case as "center[ed] on a manufacturing relationship turned sour," SC Marketing contends that Cellulose obtained a patent for an invention that SC Marketing helped develop, without SC Marketing's permission, and then told SC Marketing's other business partners that only Cellulose owns the intellectual property at issue.[17] Cellulose

---

[11] Answer – ECF No. 13.

[12] *Id.* at 6 (¶ 1), 8–11 (¶¶ 9–33).

[13] Scheduling Order – ECF No. 28.

[14] *Id.* (the parties first exchanged proposed terms on December 19, 2022, and the claim-construction hearing was on May 25, 2023); Am. Claim-Construction Order – ECF No. 65.

[15] Consents – ECF Nos. 11 & 15.

[16] Mot. – ECF No. 61.

[17] *Id.* at 4.

counters that (1) SC Marketing "offers no meaningful justification for seeking to add new claims at this late juncture," (2) Cellulose would be prejudiced by the amendment because it would expand the scope of the case and the additional discovery required would cause delay and expense, and (3) some of the proposed counterclaims are futile.[18]

Under Rule 15, if a party can no longer amend as a matter of course, that party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* This policy is applied with "extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Delay alone is insufficient to justify denial of leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). A court considers five factors to determine whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the party previously amended his pleading. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

Of the factors, prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight." *Eminence Cap.*, 316 F.3d at 1052. Prejudice in this context usually refers to the amendment's causing delay, expense or an inability on the defendant's part to respond. Rutter Group Prac. Guide, Fed. Civ. Pro. Before Trial, Amended and Supplemental Pleadings §§ 8:1516–22 (2023) (collecting cases). Absent prejudice or a strong showing on other factors, a presumption exists under Rule 15(a) favoring granting leave to amend. *Id.*; *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d. 877, 880 (9th Cir. 1999) (consideration of the factors "should be performed with all inferences in favor of granting the motion [for leave to amend]"). The party opposing a motion to amend bears the burden of showing prejudice. *DCD Programs*, 833 F.2d at 187.

The court grants SC Marketing leave to amend its answer. This is SC Marketing's first request to amend, and the court has no reason to doubt its contention that the alleged injury caused by Cellulose's statements to SC Marketing's business partners was "not apparent until after [SC

---

[18] Opp'n – ECF No. 66 at 5–6.

Marketing] filed its original answer."[19] The motion was filed before the close of fact discovery and by the deadline set by the court for seeking leave to amend the pleadings. *Unicorn Energy GMBH v. Tesla Inc.*, No. 21-CV-07476-BLF, 2022 WL 16528138, at *2 (N.D. Cal. Oct. 28, 2022) (even where the defendant knew of the facts underlying the proposed amendment ten months before seeking leave to amend, there was no undue delay because "the proposed amendment was timely filed under the [c]ourt's ordered deadline"). Certainly, some additional discovery will be needed, but it will overlap to an extent with discovery on SC Marketing's existing counterclaims (for example, for correction of inventorship). In any case, Cellulose has (at this point) separately moved to extend the fact-discovery deadline. It will not suffer undue prejudice, despite the case's scope being expanded.

Cellulose contends that the proposed additional counterclaims are futile because they merely assert that Cellulose "wrongfully asserted the '007 [p]atent against [SC Marketing]," and "numerous courts have dismissed cases where the party asserts wrongful conduct merely because it has been accused of infringement."[20]

"[A] proposed amendment is futile for the purposes of a motion for leave to amend only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid claim or defense[.]" *Id.* "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Id.* (cleaned up).

As SC Marketing points out, its new counterclaims are based on Cellulose's allegedly "taking proprietary designs and holding them out as its own in the marketplace."[21] *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1371–72 (Fed. Cir. 1999) ("[T]he unjust enrichment claim springs not from an attempt to enforce intellectual property rights, but instead from Cyanamid's alleged wrongful use of the Doctors' research results."). The court allows the

---

[19] Mot. – ECF No. 61 at 7.

[20] Opp'n – ECF No. 66 at 13–14 (collecting cases).

[21] Reply – ECF No. 68 at 5–6 (citing Proposed Am. Answer – ECF No. 61-2 at 14 (¶ 51), 15 (¶¶ 58–59).

ORDER – No. 22-cv-03141-LB       5

amendment, subject to any subsequent challenge to the new counterclaims to allow fuller briefing on the issue. *See id.* (holding nonetheless that the "unjust enrichment claim[] depend[s] on the Doctors' status as [alleged] inventors" and "federal patent law preempts any state law that purports to define rights based on inventorship").

### 2. SC Marketing's Motion for Leave to File Amended Invalidity Contentions

SC Marketing also moves for leave to amend its invalidity contentions. (It served its original invalidity contentions on the court's deadline of December 5, 2022.[22]) SC Marketing contends that because of how the court construed the disputed claim term "folded without the need for creases, grooves, or cut lines," it must supplement its invalidity contentions to explain that the patent is invalid under the court's construction (and in light of the patent's prosecution history).[23] Cellulose counters that the court's construction of the term at issue was simply the term's ordinary meaning, which is materially the same as what Cellulose proposed to SC Marketing on January 9, 2023, and thus the proposed new invalidity contention "could have been made prior to — and [was] certainly not caused by — the Claim Construction Order."[24]

Patent Local Rule 3-6 provides that:
> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include . . . (a) A claim construction by the Court different from that proposed by the party seeking amendment.

"In contrast to the more liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *GoPro, Inc. v. 360Heros, Inc.*, No. 16-cv-01944-SI, 2017 WL 1278756, at *1 (N.D. Cal. Apr. 6, 2017) (cleaned up). "The moving party bears the burden of

---

[22] Mays Decl. – ECF No. 63-1 at 2 (¶ 4).
[23] Mot. – ECF No. 63.
[24] Opp'n – ECF No. 67.

establishing diligence." *Id.* (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1355 (Fed. Cir. 2006)).

"Where the moving party is unable to show diligence, there is 'no need to consider the question of prejudice,' although a court in its discretion may elect to do so." *Id.* (quoting *O2 Micro*, 467 F.3d at 1368). "Prejudice is typically found when amending contentions stand[s] to disrupt the case schedule or other court orders." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016).

Even if the movant arguably was not diligent, the court retains discretion to grant leave to amend. *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10-cv-3724-CW, 2013 WL 5609325, at *2 (N.D. Cal. Oct. 11, 2013) (citing *O2 Micro*, 467 F.3d at 1368). "Mistakes or omissions are not by themselves good cause." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012). But "[c]ourts have allowed amendments when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery." *Id.* (granting leave to amend when there was no prejudice to the defendant); *Karl Storz Endoscopy-Am.*, 2016 WL 2855260, at *3.

Here, the court allows the amendment. SC Marketing moved to amend shortly after the claim-construction order, and the court's construction differed from SC Marketing's proposed construction.[25] *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC (LB), 2020 WL 6562319, at *3–5 (N.D. Cal. Nov. 9, 2020). It is true that, because "the court adopt[ed] the opposing party's proposed claim construction, the moving party's diligence . . . is measured from the day the moving party received the proposed constructions, not the date of issuance of the [c]ourt's claim construction opinion." *Word to Info Inc. v. Facebook Inc.*, No. 15-CV-03485-WHO, 2016 WL 6276956, at *4–5 (N.D. Cal. Oct. 27, 2016) (collecting cases), *aff'd*, 700 F. App'x 1007 (Fed. Cir. 2017). But there is still enough time left in discovery (given the court's extension of deadlines, below) and the court's claim construction is important to the particular

---

[25] Am. Claim-Construction Order – ECF No. 65 at 12–13.

invalidity contention at issue here (that the patent's specification does not enable the full scope of the claimed invention). *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1241 (Fed. Cir. 2003) ("Because a patent specification must enable the full scope of a claimed invention, an enablement inquiry typically begins with a construction of the claims.") (cleaned up). As SC Marketing put it at the hearing, it had an enablement "placeholder" in its contentions, and the issue is now ripe.

**3. Cellulose's Motion to Amend the Scheduling Order**

Next, Cellulose moves to extend the fact discovery deadline and other scheduling-order dates by two months, to accommodate further productions by SC Marketing and a scheduled hospital stay by Cellulose's expert. As of late July, ESI productions and depositions were in their early stages.[26] SC Marketing responds generally that "[Cellulose] has not been diligent and does not show good cause to extend the schedule."[27]

The court's scheduling order limits the time to complete discovery. Fed. R. Civ. P. 16(b). In the Northern District of California, "discovery cut-off" means the date on which all responses to written discovery are due and by which all depositions must be concluded, unless otherwise ordered. N.D. Cal. Civ. L.R. 37-3. "Counsel should initiate discovery requests and notice depositions sufficiently in advance of the cut-off date to comply with this local rule." *Id.*, commentary. "Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the [c]ourt for good cause shown." *Id.* Thus, discovery not completed by the discovery cut-off date is not allowed, except by court order for good cause shown. *Id.*; Fed. R. Civ. P. 16(b)(4); *see Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986).

"Although the existence or degree of prejudice to the party opposing" the request is relevant to the good-cause inquiry, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). In

---

[26] Mot. – ECF No. 73; Mitchell Decl. – ECF No. 73-1 at 3–4 (¶¶ 13–18).
[27] Opp'n – ECF No. 76.

ORDER – No. 22-cv-03141-LB                8

particular, the court "primarily considers the diligence of the party seeking amendment." *Lawrence v. City & Cnty. of San Francisco*, No. 14-cv-00820-MEJ, 2016 WL 3254232, at *2 (N.D. Cal. June 14, 2016) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992)). "Where the moving party has not been diligent, the inquiry ends and the motion should be denied." *Id.* (citing *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)).

Practically, an extension to the discovery cut-off is likely necessary for the parties to explore the amendments granted by this order, including those requested by SC Marketing. Cellulose's motion explains additional grounds for good cause, and the court does not doubt Cellulose's diligence, especially given the recency of claim construction. The court thus extends the case deadlines by two months and will separately issue an amended scheduling order.

### 4. Discovery Dispute

Finally, Cellulose moves to compel additional discovery responses from SC Marketing, contending that SC Marketing's responses thus far are deficient. The discovery requests concern SC Marketing's products other than Renewliner that it sells to Renewliner customers, SC Marketing's counterclaims, and SC Marketing's interactions with the USPTO regarding its patent application (i.e., its patent's prosecution history). SC Marketing argues generally that the "disputed discovery requests overreach and seek sensitive technical information."[28] The court orders the discovery.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

---

[28] Joint Disc. Letter Br. – ECF No. 78.

First, Cellulose's fifth interrogatory is relevant and proportional. It asks SC Marketing to identify its products other than Renewliner that are sold to Renewliner customers.[29] This is relevant to Cellulose's potential reasonable-royalty damages. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003) (a patent-infringement plaintiff cannot "include sales of non-patented items in the royalty base but [can] demonstrate that those sales were relevant in determining a reasonable royalty" because that approach is "consistent with one of the *Georgia–Pacific* factors — the effect of selling the patented specialty in promoting sales of other products of the infringer") (cleaned up). SC Marketing contends that the interrogatory is overbroad because it is written without regard to whether the other products in question are functionally relevant to the Renewliner (as required by the Federal Circuit for the sales to be "convoyed sales"). But Cellulose may test (through discovery) SC Marketing's contention that its sales of other products are not convoyed sales.

This conclusion, to be clear, is tailored to the context of this case: the targeted products are those purchased by customers who bought the packing solution Renewliner. That suggests a potential "functional relationship to the patented invention." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995). And the interrogatory asks for a list of products attached to purchases of Renewliner as a first step to consider whether they are "components of a single assembly or parts of a complete machine, or [whether] they together constitute[] a functional unit." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). It is not — as SC Marketing contends — "discovery into the entire array of product lines that [SC Marketing] offers."[30] The analysis might be different for a different product. *Cf. Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 WL 2357685, at *4–5 (N.D. Cal. May 15, 2015) (denied discovery into Oracle database or application products because the plaintiff articulated no damages theory that involved the products; the allegedly infringing middleware was not part of the same "functional unit" as the database and applications). But as the court said at the hearing, there

---

[29] *Id.* at 2.

[30] *Id.* at 3.

cannot be an insurmountable obstacle to identify potentially convoyed sales. Again, these are packaging products related to sales of packaging insulation. Unlike the unrelated products in *Thought*, the request for the product information here is reasonably calculated to lead to admissible evidence. *Id.*

Second, Cellulose's interrogatories nine through eleven are relevant and proportional. These are contention interrogatories related to SC Marketing's counterclaims.[31] According to SC Marketing's portion of the letter brief, this issue is moot because SC Marketing supplemented its responses.[32] To the extent there is any continuing dispute, the court notes that "courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." *In re eBay Seller Antitrust Litig.*, No. C07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008). Thus, as a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show that the responses would "contribute meaningfully" to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56. *In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985); *Nitride Semiconductors v. Rayvio*, No. 17-cv-2952-EJD (SJK), 2017 U.S. Dist. LEXIS 206011, at *4 (N.D. Cal. Dec. 14, 2017).

Third, Cellulose's sixth request for production asks for "copies of all Documents submitted to and/or received from the United States Patent and Trademark Office in connection with United States Patent Application Serial No. 17/686,944."[33] That patent issued in July 2023.[34] Because it is related to the patent-in-suit here (especially because of the proximity in timing of the parties' patent applications), its prosecution history is relevant and proportional. *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. CIV. 10-0541-LAB WVG, 2011 WL 5525990, at *1 (S.D. Cal.

---

[31] *Id.* at 3–4.

[32] *Id.* at 4.

[33] *Id.* at 5.

[34] *Id.* at 7.

Nov. 14, 2011) ("Relevant evidence regarding willful infringement, prior art, and equivalency may be present within Defendants' two patent applications.").

Finally, the court notes that SC Marketing's concerns about confidentiality between competitors are addressed by the protective order in this case.[35] In this regard, it is important that the patent has already issued. *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 562 (N.D. Cal. 2003) ("The secrecy of pending and abandoned U.S. patent applications should be preserved whenever possible.").

## CONCLUSION

The court grants the pending requests as reasonable adjustments to the scope of the case. This resolves ECF Nos. 61, 63, 73, and 78.

**IT IS SO ORDERED.**

Dated: August 11, 2023

_____
LAUREL BEELER
United States Magistrate Judge

---

[35] Protective Order – ECF No. 30.