RYAN R. SMITH, State Bar No. 229323
rsmith@wsgr.com
CHRISTOPHER D. MAYS, State Bar No. 266510
cmays@wsgr.com
ALEX R. MILLER, State Bar No. 347827
alex.miller@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: 650.493.9300
Facsimile: 650.565.5100

TALIN GORDNIA, State Bar No. 274213
tgordnia@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
633 West 5th St., Suite 1550
Los Angeles, CA 90071
Telephone: 323.210.2925

Attorneys for Defendant
SC MARKETING GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CELLULOSE MATERIAL SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SC MARKETING GROUP, INC.,<br><br>Defendant. | Case No. 3:22-cv-03141-LB<br><br>**DEFENDANT SC MARKETING GROUP, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF INVALIDITY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATION OF CHRISTOPHER D. MAYS FILED CONCURRENTLY HEREWITH]**<br><br>**Judge:    Hon. Laurel Beeler**<br>**Date:     February 29, 2024**<br>**Time:     9:30 a.m.**<br>**Location: San Francisco Courthouse, Courtroom B – 15th Floor** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ISSUES TO BE DECIDED .................................................................................................. 2

III. BACKGROUND .................................................................................................................. 2

IV. LEGAL STANDARD FOR SUMMARY JUDGMENT ..................................................... 5

V. ARGUMENT ....................................................................................................................... 6

    A.    CMS's Offer to Sell the Alleged Prototype of the Patented Invention to TSS in June 2015 Invalidates the '007 Patent Under 35 U.S.C. § 102's On-Sale Bar .......................................................................................................................... 6

    B.    TSS's Accused RENEWLINER Product Invalidates the '007 Patent As Anticipating Prior Art Under 35 U.S.C. § 102 ...................................................... 7

VI. CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................... 5, 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................................. 5

*CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK,
    2013 U.S. Dist. LEXIS 179253 (N.D. Cal. Dec. 18, 2013) ................................................. 8

*Intel Corp. v. United States ITC*,
    946 F.2d 821 (Fed. Cir. 1991) .............................................................................................. 6

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005) ............................................................................................ 6

*Ivera Med. Corp. v. Hospira, Inc.*,
    801 F.3d 1336 (Fed. Cir. 2015) ............................................................................................ 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................................. 5

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) ................................................................................................................ 7

*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
    701 F.3d 698 (Fed. Cir. 2012) .............................................................................................. 7

*Peters v. Active Mfg.*,
    129 U.S. 530 (1889) .............................................................................................................. 8

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998) ................................................................................................................ 6

*PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*,
    525 F.3d 1159 (Fed. Cir. 2008) ............................................................................................ 5

*Schering Corp. v. Geneva Pharms., Inc.*,
    339 F.3d 1373 (Fed. Cir. 2003) ............................................................................................ 7

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    593 F.3d 1325 (Fed. Cir. 2010) ............................................................................................ 7

*Thornhill Publ'g Co., Inc. v. GTE Corp.*,
    594 F.2d 730 (9th Cir. 1979) ................................................................................................ 6

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) ............................................................................................ 7

**STATUTES**

35 U.S.C. § 102 ................................................................................................................*passim*

**RULES**

Fed. R. Civ. P. 56 ............................................................................................................................ 5

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that this matter will be heard on **February 29, 2024** at **9:30 a.m.** in the San Francisco Courthouse, Courtroom B – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 or on a date to be determined by the Court, Defendant SC Marketing Group, Inc. dba Thermal Shipping Solutions ("TSS"), by and through their counsel, will move for summary judgment of invalidity of U.S. Patent No. 11,078,007 ("the '007 Patent") based on 35 U.S.C. § 102.

This Motion is made pursuant to Federal Rule of Civil Procedure 56(a), and is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, associated Declaration and any exhibits thereto, the Proposed Order submitted herewith, all pleadings and paper on file in this action, and such further evidence that may be submitted to the Court at or before the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This case has lacked merit since its inception. In 2015, TSS contacted Plaintiff Cellulose Material Solutions, LLC's ("CMS") about potentially manufacturing a recyclable thermal box liner sufficient to insulate packaging for transport of refrigerated materials (known as the cold chain packaging market). CMS did not have such a product at the time, nor did they operate in the cold chain packaging market. After the relationship between CMS and TSS ended in late 2015, CMS filed what ultimately issued as the '007 Patent for a recyclable thermal box liner, concealing Mr. Cardinale's inventive contribution. In a transparent attempt to deny Mr. Cardinale co-inventorship, CMS's President (Matt Henderson) testified during his deposition that CMS completed the '007 Patent's claimed invention *and offered it for sale* in June 2015. Because this purported offer for sale predates the patent's June 27, 2016, filing date by more than one year, Mr. Henderson's testimony subjects the '007 Patent to an on-sale bar that invalidates the patent.

Even before its relationship with CMS ended, TSS was working with other manufacturing partners and began selling its RENEWLINER product in February 2016—months <u>before</u> the '007

1 Patent's filing date. This fact combined with CMS's false allegation that the RENEWLINER

2 product satisfies all limitations of the asserted claims in the '007 Patent, independently renders the

3 RENEWLINER product anticipating prior art under 35 U.S.C. § 102. TSS respectfully requests

4 summary judgment of invalidity of the '007 Patent based on 35 U.S.C. § 102.

5 **II.   ISSUES TO BE DECIDED**

6 Whether TSS should be granted summary judgment of invalidity of the '007 Patent based

7 on 35 U.S.C. § 102 because (1) CMS claims to have offered to sell the claimed invention more

8 than one year before the filing date of the '007 Patent's application; and (2) TSS's

9 RENEWLINER product, which CMS accuses of satisfying all limitations of the asserted claims

10 in the '007 Patent, was offered for sale in the United States before the '007 Patent filing date.

11 **III.   BACKGROUND**

12 Salvatore Cardinale, a pioneer in eco-friendly packaging materials, founded TSS. *See*

13 Mays Decl. Ex.[1] 1 ¶ 3. Mr. Cardinale conceived and commercialized several innovative packaging

14 solutions before devising the product at issue in this case. *See id.* Mr. Cardinale realized that

15 polyethylene terephthalate ("PET"), which is commonly used for plastic water bottles and other

16 containers, could also be used as an insulating layer for packaging perishables. *See id.* As a small

17 company, focused on product innovation and marketing, TSS required a manufacturing partner.

18 *See id.* TSS turned to CMS. *See id.*

19 The relationship began in April 2015. *See id.* CMS was interested in TSS's packaging

20 expertise, and CMS appeared to possess the manufacturing capacity. *See id.* As was common in

21 this industry at the time, the parties' relationship was based on handshakes, rather than detailed

22 written agreements. *See id.* On June 19, 2015, one of the named inventors of the '007 Patent,

23 Christopher Benner, sent Mr. Cardinale an email that read, in relevant part:

24  As a final option, if CMS were able to produce a proprietary, insulative material just
for TSS that was dust-free, easily recyclable in standard recycling systems, dark grey
25  in color, and contained at least the same 85% recycled content as the Denim
insulation, would Hello Fresh consider it? If so, by eliminating all the added costs
26

27 ─────────────

28 [1] "Ex." refers to exhibits to the Declaration of Christopher D. Mays in support of the current Motion ("Mays Decl.").

DEFENDANT'S MOTION FOR SUMMARY        -2-        CASE NO. 3:22-cv-03141-LB
JUDGMENT OF INVALIDITY; MEMORANDUM OF
POINTS & AUTHORITIES

>of poly-coated paper facings, labor to wrap, etc... What material $/sqft target + die-cutting cost ($0.26/ea flat-bed or $0.15/ea rotary die cutter) you could work with to win this business from Bonded Logic? I was estimating somewhere in the $0.43+/sqft range...
>
>Did I mention this new material is highly compressible (similar to urethane foam) and could also be a cost-effective solution to those for your Kangaroo mailers you asked me to look at? When you get a few minutes, I would like to personally discuss this exciting material option with you? Thanks!

*See* Ex. 2 (CMS0022031); Dkt. 112-1, Ex. A ¶¶ 10-14. According to CMS's President Matthew Henderson, this email constituted an offer to sell TSS a viable prototype of a product embodying every element of the '007 Patent's claims. *See* Ex. 3 (Henderson Depo. Tr.) 139:5-9; *see also id.* 29:12-30:10, 50:15-51:5, 72:11-73:8, 136:15-139:9, 156:9-24. Specifically, Mr. Henderson responded "yes" after being asked whether the product he was "offering to sell Thermal Shipping on June 19, 2015, was the InfinityCore product that practices the claims of the patent." *Id.* 139:5-9.

Mr. Henderson also testified that there were no material changes between the purported prototype that he contends CMS offered to sell TSS on June 19, 2015 and the commercialized version of CMS's INFINITYCORE product that Mr. Henderson also testified practices the claims of the '007 Patent. *See id.* 138:2-14; *see also id.* 138:16-139:9, 88:4-10. Additionally, CMS's General Manager Kevin Chase testified that CMS had a minimum viable prototype of the INFINITYCORE product in the first half of 2015. *See* Ex. 4 (Chase Depo. Tr.) 36:2-8. TSS declined to accept CMS's offer but continued to explore partnership opportunities with CMS. *See* Dkt. 99-4, Ex. 7 (Cardinale Depo. Tr.) 39:21-40:13, 44:18-46:7, 46:23-49:14.

The relationship between TSS and CMS ended in late 2015. Ex. 1 ¶ 3. TSS then worked with other manufacturers, such as Turner Fiberfill Inc., to produce its current RENEWLINER product. *Id.* ¶ 4. TSS began selling its RENEWLINER product by at least as early as February 23, 2016. *Id.* ¶ 5; *see also* Ex. 5 (TSS_00001791). TSS has never materially changed its RENEWLINER product. *See* Ex. 1 ¶ 5; *see also* Ex. 6 (Decl. of expert, Radhakrishnaiah Parachuru) ¶ 12; Ex. 7 (Turner Depo. Tr.) 32:23-33:7. After comparing a sample of RENEWLINER product manufactured in 2016 to a sample manufactured in 2023, TSS's technical

1  expert, Radhakrishnaiah Parachuru, concluded that the fiber diameters of the bulk fibers and the
2  binder fibers used in both samples are the same, which implies that the fiber deniers are the same;
3  the chemical identity and the composition of both binder and bulk fibers and their composition are
4  either identical or very close to each other; the overall porosity and micro arrangement of fibers in
5  the two samples are very similar and close to each other; and both samples have layered structure
6  in the thickness direction, meaning that both samples were built by super-imposing multiple layers
7  of web one on top of the other.  Ex. 6 (Decl. of expert, Radhakrishnaiah Parachuru) ¶ 12.  TSS also
8  filed a provisional patent application to protect the underlying technology on February 24, 2016.
9  There are no material differences between the RENEWLINER product shown in photographs
10 submitted with the patent application and the RENEWLINER product sold today.

11         CMS eventually began manufacturing its own variant (under the INFINITYCORE brand-
12 name) and aggressively pursued TSS's customers.  CMS later also filed a patent application, the
13 claims of which CMS now alleges cover RENEWLINER, on June 27, 2016.  CMS's patent issued
14 first in late 2021 as the '007 Patent, and TSS's patent issued in 2023.  CMS did not name Mr.
15 Cardinale on the '007 Patent nor did it disclose TSS's involvement in developing the technology.
16 To avoid having its application rejected in view of TSS's earlier provisional patent application,
17 CMS submitted a declaration alleging that TSS had derived the subject matter of its invention from
18 CMS and alternatively attempting to distinguish its patent application from TSS's.  Because patent
19 prosecution is an *ex parte* process, TSS had no opportunity to refute (or even respond to) the
20 allegations.

21         TSS and CMS now directly compete in the highly competitive business of packaging
22 insulation.  *See* Ex. 1 ¶ 6.  The parties compete against several other insulation products, including
23 paper-based insulation, Styrofoam, compostable plastics, and numerous other materials.  *Id.*

24         CMS instituted this patent litigation on May 27, 2022.  *See* Dkt. No. 1.  CMS alleges that
25 TSS infringes claims 1-24 of the '007 Patent based on the RENEWLINER product literally
26 satisfying all limitations of the asserted claims of the '007 Patent.  *See* Ex. 8 (Plaintiff's Second
27 Supplemental Disclosure of Asserted Claims and Infringement Contentions).  On June 24, 2022,
28 TSS filed its original Answer and Counterclaims alleging, *inter alia*, that CMS failed to name TSS

1  employees as inventors of the '007 Patent, making it unenforceable against TSS, and that the
2  asserted claims of the '007 Patent are invalid. *See* Dkt. 13 at 8-11. TSS has also amended its
3  Answer and Counterclaims to include additional state law claims against CMS. *See* Dkt. 85.

4  **IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT**

5  Summary judgment is proper when there is no genuine dispute as to any material fact and
6  the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *PSN Illinois, LLC v.*
7  *Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1164 (Fed. Cir. 2008). A dispute is genuine if it could
8  reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
9  242, 247-48 (1986). There is no material fact dispute and thus summary judgment is appropriate
10 if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving
11 party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

12 The moving party has the initial burden of informing the court of the basis for its motion
13 and identifying those portions of the record that demonstrate the absence of a genuine dispute of
14 material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party can
15 satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the
16 nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an
17 essential element of the nonmoving party's case that the nonmoving party bears the burden of
18 proving at trial. *Id.* at 322-23. Once the movant has made this showing, the burden shifts to the
19 nonmoving party to identify specific evidence showing that a material factual issue remains for
20 trial. *Id.* at 324. The nonmoving party may not rest on mere allegations or denials from its
21 pleadings, but must "cit[e] to particular parts of materials in the record" demonstrating the presence
22 of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A); *see also Anderson*, 477 U.S. at 248. If
23 the nonmoving party cannot produce such evidence, the movant "is entitled to a judgment as a
24 matter of law because the nonmoving party has failed to make a sufficient showing on an essential
25 element of her case." *Celotex*, 477 U.S. at 323.

26 "Only disputes over facts that might affect the outcome of the suit under the governing law
27 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Factual
28 disputes that are irrelevant or unnecessary will not be counted." *Id.* "Credibility determinations,

1 the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. at 255. However, conclusory and speculative testimony does not raise a genuine factual dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

## V. ARGUMENT

### A. CMS's Offer to Sell the Alleged Prototype of the Patented Invention to TSS in June 2015 Invalidates the '007 Patent Under 35 U.S.C. § 102's On-Sale Bar

The on-sale bar is codified at 35 U.S.C. § 102(b) (2011), which states that a patent can be invalidated if the invention was on sale more than one year prior to the date of application for patent in the United States. "[T]he on-sale bar applies when two conditions are satisfied before the critical date." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). Specifically, (1) "the product must be the subject of a commercial offer for sale" and (2) "the invention must be ready for patenting." *Id.* To prevail, the defendant must establish these facts by clear and convincing evidence. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005).

Whether a particular activity raises the on-sale bar is a question of law, based on underlying factual considerations. *Intel Corp. v. United States ITC*, 946 F.2d 821, 829 (Fed. Cir. 1991). "A single sale or offer to sell is enough to bar patentability." *Id.* at 830.

Here, the critical date is one year before the '007 Patent was filed—June 27, 2016. CMS itself alleges that it offered to sell TSS a viable prototype of the INFINITYCORE product—a product embodying every element of the '007 Patent's claims—on June 19, 2015. *See* Ex. 3 (Henderson Depo. Tr.) 139:5-9; *see also id.* 29:12-30:10, 50:15-51:5, 72:11-73:8, 136:15-139:9, 156:9-24; Dkt. 112-1 ¶¶ 10-14. There is no genuine dispute, therefore, that the patented invention was the subject of a commercial offer to sell on June 19, 2015, which is before the critical date. It is also undisputed that CMS alleges that the product offered to TSS at that time was ready for patenting because CMS claims that there were no material changes between the product offered to TSS and the commercialized version of CMS's INFINITYCORE product. *See id.* 138:2-14; *see also id.* 138:16-139:9; 88:4-10. In addition, CMS alleges that it had reduced to practice a minimum viable prototype of the INFINITYCORE product in the first half of 2015. *See* Ex. 4 (Chase Depo.

1  Tr.) 36:2-8.  Taking the record as a whole, a rational trier of fact could only conclude that the
2  requirements to apply the on-sale bar have been met to invalidate the '007 Patent.
3        In sum, CMS's June 19, 2015 offer to sell TSS what CMS alleges to have been a viable
4  prototype of the claimed invention invalidates the '007 Patent.  This Court should therefore grant
5  summary judgment for TSS that the '007 Patent is invalid under 35 U.S.C. § 102's on-sale bar.

6        **B.**    **TSS's Accused RENEWLINER Product Invalidates the '007 Patent As Anticipating Prior Art Under 35 U.S.C. § 102**
7

8        A patent claim is invalid if the claimed invention was "patented, described in a printed
9  publication, or in public use, on sale, or otherwise available to the public before the effective filing
10 date of the claimed invention."  35 U.S.C. § 102(a)(1).
11       "For a claim to be anticipated, each claim element must be disclosed, either expressly or
12 inherently, in a single prior art reference."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d
13 1325, 1332 (Fed. Cir. 2010); *see Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379
14 (Fed. Cir. 2003).
15       "Anticipation, though a question of fact, may be resolved on summary judgment if no
16 genuine issue of material fact exists."  *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701
17 F.3d 698, 704 (Fed. Cir. 2012).  "Summary judgment is proper if no reasonable jury could find
18 that the patent is not anticipated."  *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348,
19 1357 (Fed. Cir. 2008).  At summary judgment, the Court "must also take into account that
20 invalidity of a patent must be shown by clear and convincing evidence."  *Ivera Med. Corp. v.
21 Hospira, Inc.*, 801 F.3d 1336, 1343 (Fed. Cir. 2015); *see also Microsoft Corp. v. i4i Ltd. P'ship*,
22 564 U.S. 91, 95 (2011).
23       Here, the very TSS product that CMS accuses of infringement in this case invalidates the
24 asserted claims of the '007 Patent under 35 U.S.C. § 102(a).  TSS has been manufacturing and
25 selling its RENEWLINER product since at least as early as February 23, 2016, without any
26 material changes.  *See* Ex. 1 ¶ 5; *see also* Ex. 6 (TSS_00001791); Ex. 6 ¶ 12; Ex. 7 (Turner Depo.
27 Tr.) 32:23-33:7.  TSS's sales of the RENEWLINER product therefore predate the effective filing
28 date of CMS's claimed invention.

1    Additionally, CMS contends that the RENEWLINER product satisfies all of the claims in
2 the '007 Patent.  *See* Ex. 8 (Plaintiff's Second Supplemental Disclosure of Asserted Claims and
3 Infringement Contentions).  Under CMS's theory of infringement, there can be no dispute that all
4 of the claims in the '007 Patent are anticipated by TSS's RENEWLINER product because "[t]hat
5 which infringes, if later, would anticipate, if earlier." *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-
6 6635-LHK, 2013 U.S. Dist. LEXIS 179253, at *11 (N.D. Cal. Dec. 18, 2013) (quoting *Peters v.*
7 *Active Mfg.*, 129 U.S. 530, 537 (1889)).  No genuine issue of material fact exists as to (1) whether
8 TSS started selling its RENEWLINER product before the effective filing date of the claimed
9 invention and (2) whether CMS contends that the RENEWLINER product practices all of the
10 claims of the '007 Patent.  No reasonable jury, therefore, could find that the '007 Patent is not
11 anticipated by TSS's RENEWLINER product.
12    In sum, each claim of the '007 Patent is anticipated by TSS's RENEWLINER product,
13 which TSS was selling before the filing date of the patent.  This Court should therefore grant
14 summary judgment for TSS that the '007 Patent is invalid as anticipated under 35 U.S.C. § 102.

## VI.   CONCLUSION

16   For the foregoing reasons, TSS respectfully requests this Court grant summary judgment
17 that the '007 Patent is invalid under 35 U.S.C. § 102.

Dated: January 16, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Ryan R. Smith*
    Ryan R. Smith
    *rsmith@wsgr.com*

Attorneys for Defendant
SC MARKETING GROUP, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses of those on file.

Dated: January 16, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Ryan R. Smith
Ryan R. Smith
rsmith@wsgr.com

Attorneys for Defendant
SC MARKETING GROUP, INC.