UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CELLULOSE MATERIAL SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SC MARKETING GROUP, INC.,<br><br>Defendant. | Case No. 22-cv-03141-LB<br><br>**ORDER REGARDING THE DEFENDANT'S SUMMARY-JUDGMENT MOTION**<br><br>Re: ECF No. 141 |

**INTRODUCTION**

Plaintiff Cellulose Material Solutions claims that defendant SC Marketing Group (also known as Thermal Shipping Solutions) infringes a patent for packaging insulation that keeps the package contents — for example, meal kits with food items — cool and fresh without the need for refrigerant packs. The patent is U.S. Patent No. 11,078,007 (the '007 patent). The parties are competitors.[1] Cellulose's insulation product is called InfinityCore, and Thermal Shipping's product is called Renewliner.[2] Thermal Shipping moved for summary judgment of invalidity on two grounds: that an offer by Cellulose to Thermal Shipping to sell a prototype of the invention, before

---

[1] Compl. – ECF No. 1 at 1–2 (¶ 1), 4 (¶ 16), 6 (¶ 30); U.S. Patent No. 11,078,007 (filed June 27, 2016) – ECF No. 1-1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1 at 2 (¶ 2), 3 (¶ 15). The complaint capitalizes the product names.

ORDER – No. 22-cv-03141-LB

the patent's filing date, triggered the on-sale bar of 35 U.S.C. § 102; and that the Renewliner is anticipating prior art under § 102. The court denies the motion on the first ground but orders further briefing on the second.

## STATEMENT

Salvatore Cardinale, Thermal Shipping's owner, President, and Chief Executive Officer, declares that he "developed the idea of using a polyethylene terephthalate ('PET') batt with PET liners on both sides for packaging perishables, but [he] required a manufacturing partner to create a refined finalized product." He thus entered into an "informal partnership" with Cellulose to manufacture "a recyclable thermal box liner. Eventually, the relationship ended in late 2015." After this, Thermal Shipping began working with various other manufacturers to sell the Renewliner, starting "at least as early as February 23, 2016."[3] The '007 patent was filed on June 27, 2016.[4]

Cellulose's president Matthew Henderson testified that starting in May 2015, Cellulose began developing a product with "100 percent PET with PET film on both sides."[5]

On June 19, 2015, Cellulose employee Christopher Benner, who is one of the named inventors of the '007 patent, sent an email to Mr. Cardinale offering "to produce a proprietary, insulative material just for [Thermal Shipping]." The email discussed pricing, claimed that "this new material is highly compressible (similar to urethane foam)," and solicited a discussion of "this exciting material option."[6] Mr. Henderson testified that "the product [Cellulose was] offering to sell Thermal Shipping" in the email "was the InfinityCore product that practices the claims of the ['007] patent."[7] He declares that he "view[s] that email as no more than an 'offer' of the potential product to [Thermal Shipping] in the sense that [Cellulose was] seeking to [gauge] possible interest and invite further discussion." Cellulose "does not make commercial offers that lack specifics as to at least price, quantity, payment terms, delivery terms, and the specific product

---

[3] Cardinale Decl. – ECF No. 141-2 at 3 (¶¶ 3–5).
[4] U.S. Patent No. 11,078,007 – ECF No. 1-1.
[5] Henderson Dep. – ECF No. 149-4 at 11–13 (pp. 41:13–42:25, 50:15–21).
[6] E-mail from Chris Benner – ECF No. 141-3 at 2.
[7] Henderson Dep. – ECF No. 140-3 at 14–15 (pp. 138:8–139:9).

being manufactured." Ultimately, according to Mr. Henderson, the discussions resulted in a sale by Cellulose to Thermal Shipping of the product, to be labeled by Thermal Shipping as the Renewliner. Cellulose received the purchase order for that sale on February 23, 2016.[8]

All parties consented to magistrate-judge jurisdiction.[9]

## STANDARD OF REVIEW

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

---

[8] Henderson Decl. – ECF No. 149-2 at 3–4 (¶¶ 5–8).

[9] Consents – ECF Nos. 11 & 15.

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the non-moving party does not produce evidence to show a genuine issue of material fact, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

## ANALYSIS

Thermal Shipping first contends that the '007 patent is invalid because the claimed invention was on sale before the patent's June 27, 2016 filing date, given the email from Mr. Benner to Mr. Cardinale in June 2015. Cellulose responds that the email did not amount to a commercial offer for sale.

Under 35 U.S.C. § 102(a)(1), a patent is invalid if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." But such a disclosure does not result in invalidity if it was made one year or less before the effective filing date and it "was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." *Id.* § 102(b)(1)(A). Thus, an offer to sell by the inventor that was within one year of the filing date does not invalidate the patent. (Here, that means that the June 19, 2015 email from Mr. Benner to Mr. Cardinale is key.)

"Whether the on-sale bar applies is a question of law based on underlying factual findings." *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016). "[A]n accused infringer challenging the validity of a patent under the on-sale bar must demonstrate by clear and convincing evidence" that the requirements are met. *Elan Corp., PLC v. Andrx Pharms., Inc.*, 366 F.3d 1336, 1340 (Fed. Cir. 2004). Those requirements are that "the claimed invention (1) was the subject of a commercial offer for sale[] and (2) was ready for patenting." *Medicines Co.*, 827 F.3d at 1372.

Regarding the first requirement, "[o]nly an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under [§ 102]." *Merck & Cie v. Watson Lab'ys, Inc.*, 822 F.3d 1347, 1351 (Fed. Cir. 2016) (cleaned up). This analysis is one of "traditional contract law principles." *Id.* (cleaned up). "An offer for sale does not have to be accepted to implicate the on sale bar." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328 (Fed. Cir. 2001). But it must be "sufficiently definite." *Id.* The Uniform Commercial Code (UCC) and the Restatement of Contracts are "useful, though not authoritative, source[s]." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1047–48 (Fed. Cir. 2001).

"[M]ere preparations for commercial sales are not themselves 'commercial sales' or 'commercial offers for sale' under the on-sale bar." *Medicines Co.*, 827 F.3d at 1377. "Language suggesting a legal offer, such as 'I offer' or 'I promise' can be contrasted with language suggesting more preliminary negotiations, such as 'I quote' or 'are you interested.'" *Grp. One*, 254 F.3d at 1048. But ultimately, there is no "binding guidance" for determining whether a commercial offer occurred, and "what constitutes a definite offer[] requires looking closely at the language of the proposal itself." *Id.*

"[T]he 'ready for patenting' requirement can be met in at least two ways: (1) proof of a reduction to practice; or (2) drawings or other descriptions sufficiently specific to enable a person of ordinary skill to practice the invention." *Medicines Co.*, 827 F.3d at 1373.

Here, the June 19, 2015 email did not meet the first on-sale-bar requirement because it was a preparation for a sale rather than a definite offer. It invited a further discussion regarding a general "material option" for packaging insulation. It had no definite terms such as quantity and although

it discussed pricing, it was per-unit pricing in the nature of a "quotation of price," that is, "a statement of price per unit of quantity." Restatement (Second) of Contracts § 26, cmt. c (a quotation "may omit the quantity to be sold, time and place of delivery, terms of payment, and other terms" and "is commonly understood as inviting an offer rather than as making one"). The court thus denies the motion on this ground.

Thermal Shipping contends that Mr. Henderson's saying in his deposition that the June 19, 2015 email was an "offer" is dispositive. Under the relevant standards, though, the court is to evaluate the email itself and its terms. Thermal Shipping also contends (in its reply brief) that even if the email did not amount to a commercial offer, it made the claimed invention "otherwise publicly available" under § 102. But that would defeat the purpose of the requirement that a sales communication rise to the level of an offer.

The next issue is whether Thermal Shipping's selling the Renewliner starting in February 2016 made the Renewliner anticipating prior art under § 102, given that Cellulose alleges that the Renewliner practices the claimed invention. Cellulose counters that it supplied the product Thermal Shipping labeled as the Renewliner. 35 U.S.C. § 102(b)(1)(A) (a disclosure does not result in invalidity if it was made one year or less before the effective filing date and it "was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor"). In reply, Thermal Shipping argues that Cellulose "has not met its burden of proof that the Renewliner product originated from [Cellulose's] claimed invention or that there was a qualifying disclosure under the exceptions outlined in 35 U.S.C. § 102(b)(1)."

"For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference." *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332–33 (Fed. Cir. 2010). "Anticipation, though a question of fact, may be resolved on summary judgment if no genuine issue of material fact exists." *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012).

"When an alleged infringer attacks the validity of an issued patent," the law "places the burden of persuasion on the attacker to prove invalidity by clear and convincing evidence." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("[T]he risk of decisional uncertainty stays on the proponent of the proposition."). "A quite different burden is that of going forward with evidence," which is "a shifting burden" that "mean[s] both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." *Id.* Thermal Shipping, "having the ultimate burden of proving its defense of invalidity based on anticipating prior art, . . . has the burden of going forward with evidence that there is such anticipating prior art." *Id.* Cellulose then "has the burden of going forward with evidence" in rebuttal, such as evidence "that the prior art does not actually anticipate." *Id.*

Here, Thermal Shipping met its initial burden with evidence that its February 2016 Renewliner sale was anticipating prior art: Cellulose alleges that the Renewliner satisfies all claims of the '007 patent. *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-cv-6635-LHK, 2013 WL 6673676, at *4 (N.D. Cal. Dec. 18, 2013) ("[T]hat which infringes, if later, would anticipate, if earlier.") (cleaned up). But if that "prior art" was received from the inventor within one year before the patent's filing date, § 102 dictates that it doesn't invalidate the patent. 35 U.S.C. § 102(b)(1)(A). Cellulose therefore responds with evidence that the initial Renewliner product was received from the '007 patent's named inventors. Specifically, the February 23, 2016 purchase order was for Cellulose to ship the product directly to Thermal Shipping's end customer Dinner Thyme.[10] Given that the named inventors worked at Cellulose, that is at least evidence.

In its reply brief, though, Thermal Shipping points to an April 2016 sale of the Renewliner that was fulfilled for Thermal Shipping by its vendor Turner Fiberfill rather than Cellulose. Thermal Shipping contends that Cellulose "has not come forward with any evidence showing that the Renewliner product Turner sold in April 2016 originated from [Cellulose] (thus foreclosing it as prior art)." In its opposition, Cellulose pointed out that Thermal Shipping and Turner didn't complete their manufacturing agreement until July 2016 (after the patent's filing date) and Turner didn't ship any

---

[10] Purchase Order – ECF No. 141-6.

Renewliner product until after then. Cellulose also made the point that a disclosure made one year or less before the patent filing date "shall not be prior art to the claimed invention" if "the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." 35 U.S.C. § 102(b)(1)(B). (Cellulose's February 2016 disclosure would be the one preceding the April 2016 Turner disclosure.) In reply, Thermal Shipping argues that there were differences between the February 2016 Renewliner and the April 2016 Renewliner: "[f]or example, Mr. Henderson stated that the only process [Cellulose] uses to manufacture the patented product is an air laid process," whereas Turner "instead used a carding machine and a lapper."

The dispositive issue is whether the April 2016 purchase order is itself a prior-art reference that sufficiently discloses the invention (expressly or inherently) and isn't preempted by the February 2016 purchase order (as a result of being the same). Regarding whether the two prior-art references must be the same, Thermal Shipping cited only a USPTO manual, which states that even "trivial or obvious variations" mean the latter reference isn't preempted. "This controversial interpretation was criticized as being very narrow with respect to third-party disclosures, causing an uproar in the patent community." Jordan S. Joachim, *Is the AIA the End of Grace? Examining the Effect of the America Invents Act on the Patent Grace Period*, 90 N.Y.U. L. Rev. 1293, 1306 (2015).

Overall, the court could benefit from further briefing and thus orders one further brief from each party, each due on March 7, 2024 and limited to ten pages.

## CONCLUSION

This resolves ECF No. 141.

**IT IS SO ORDERED.**

Dated: February 29, 2024

_____
LAUREL BEELER
United States Magistrate Judge