RYAN R. SMITH, State Bar No. 229323
rsmith@wsgr.com
CHRISTOPHER D. MAYS, State Bar No. 266510
cmays@wsgr.com
ALEX R. MILLER, State Bar No. 347827
alex.miller@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: 650.493.9300
Facsimile:  650.565.5100

AVA SHELBY, State Bar No. 312012
ashelby@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: 323.210.2900
Facsimile: 866.974.7329

Attorneys for Defendant
SC MARKETING GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CELLULOSE MATERIAL SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SC MARKETING GROUP, INC.,<br><br>Defendant. | Case No. 3:22-cv-03141-LB<br><br>**DEFENDANT SC MARKETING GROUP, INC.'S MOTION FOR RECONSIDERATION OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY [DKT. 141]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATION OF CHRISTOPHER D. MAYS FILED CONCURRENTLY HEREWITH]**<br><br>**Judge:     Hon. Laurel Beeler**<br>**Date:      November 7, 2024**<br>**Time:     9:30 a.m.**<br>**Location: San Francisco Courthouse,**<br>**Courtroom B – 15th Floor** |

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION ................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................................1

I. INTRODUCTION AND SUMMARY OF ISSUES .............................................................1

II. BACKGROUND..................................................................................................................2

    A. Relevant Procedural History ...................................................................................2

    B. The Federal Circuit's *Sanho* Decision ....................................................................2

    C. Development History of 2016 Renewliner...............................................................4

III. ARGUMENT .......................................................................................................................6

    A. The Court Should Reconsider its Prior Order. .........................................................6

    B. 2016 Renewliner is Anticipatory Prior Art. .............................................................6

        1. 2016 Renewliner Qualifies as Prior Art Under Section 102(a)(1). .............6

        2. Section 102(b)(1)(A) Does Not Apply Because TSS and Turner Did Not Derive 2016 Renewliner from the '007 Patent's Inventors..................8

        3. Section 102(b)(1)(B) Does Not Apply Because CMS Did Not Publicly Disclose Its Invention. ..................................................................9

IV. CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK,
    2013 WL 6673676 (N.D. Cal. Dec. 18, 2013) ................................................................. 8

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
    800 F.3d 1375 (Fed. Cir. 2015) ................................................................................. 8, 9

*FMC Techs., Inc. v. OneSubsea IP UK Ltd.*,
    412 F. Supp. 3d 706 (S.D. Tex. 2019) ........................................................................... 8

*Helsinn Healthcare S. A. v. Teva Pharms. USA, Inc.*, No. 2016-1284,
    2018 WL 1583031 (Fed. Cir. Jan. 16, 2018)
    (O'Malley, J., concurring in denial of rehearing *en banc*) .......................................... 3, 6

*Hibbs v. Winn*,
    542 U.S. 88 (2004) ........................................................................................................ 3

*Medicines Co. v. Hospira, Inc.*,
    827 F.3d 1363 (Fed. Cir. 2016) ..................................................................................... 7

*Peters v. Active Mfg.*,
    129 U.S. 530 (1889) ...................................................................................................... 8

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998) ........................................................................................................ 7

*Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc*,
    108 F.4th 1376 (Fed. Cir. 2024) ............................................................................*passim*

*Scaltech, Inc. v. Retec/Tetra, LLC*,
    269 F.3d 1321 (Fed. Cir. 2001) ..................................................................................... 7

*STX, LLC v. Brine, Inc.*,
    211 F.3d 588 (Fed. Cir. 2000) ....................................................................................... 7

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) ..................................................................................... 9

**STATUTES**

35 U.S.C. § 102 ...............................................................................................................*passim*

Civil L.R. 7-9(b)(2) ................................................................................................................. 6

**RULES**

Fed. R. Civ. P. 54(b) ............................................................................................................... 6

Defendant's Motion for Reconsideration of
Motion for Summary Judgment of invalidity;
Memorandum of points & authorities
-ii-
Case No. 3:22-cv-03141-LB

# NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that this matter will be heard on **November 7, 2024** at **9:30 a.m.** in the San Francisco Courthouse, Courtroom B – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 or on a date to be determined by the Court, Defendant SC Marketing Group, Inc. dba Thermal Shipping Solutions ("TSS"), by and through their counsel, will move for a Motion for Reconsideration of its Motion for Summary Judgment of Invalidity of U.S. Patent No. 11,078,007 ("the '007 Patent") based on 35 U.S.C. § 102.

This Motion is made pursuant to Civil L.R. 7-9, FED. R. OF CIV. P. 54(b), FED. R. OF CIV. P. 56(a), and the Court's August 21, 2024, Order (Dkt. 210) granting TSS leave to file this Motion.

This motion is further based on the recent Federal Circuit decision in *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc*, 108 F.4th 1376 (Fed. Cir. 2024); TSS's previous Motion for Summary Judgment (Dkt. 141) and the Court's May 10, 2024, Order (Dkt. 183) denying that Motion; this Notice of Motion and attached Memorandum of Points and Authorities, associated Declaration and any exhibits thereto; the Proposed Order to this Motion; all pleadings and papers on file; and such further evidence that may be submitted to the Court at or before the hearing on this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ISSUES

CMS's patent infringement allegations against TSS are unfounded. TSS began selling the products that CMS now accuses of infringement (Renewliner) months before CMS filed its patent application and years before CMS's patent issued.

The Court previously denied TSS's motion for summary judgment of invalidity based on the on-sale bar under 35 U.S.C. § 102 (Dkt. 141, 183) because CMS claimed it had "publicly disclosed" its invention by offering it for sale to TSS's customer (Dinner Thyme) and providing samples (at TSS's request) to certain TSS customers. *See* 35 U.S.C. § 102(b) ("Section 102(b)"). Since that decision, however, the Federal Circuit issued a precedential decision interpreting the scope of a "public disclosure" under Section 102(b). In that decision, the Federal Circuit expressly rejected arguments that a public disclosure occurs by either a non-confidential but otherwise private sale or a private provision of a sample. Instead, the Federal Circuit held that "'publicly disclosed by the inventor' must mean that it is reasonable to conclude that the invention was made available to the public." *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc*, 108 F.4th 1376, 1382 (Fed. Cir. 2024). The Court should, therefore, reconsider its prior order denying summary judgment.

Further, the Court should grant summary judgment of invalidity because there is no material dispute of fact as to whether TSS's 2016 Renewliner ("2016 Renewliner") was on sale at least by April 2016, two months before the '007 Patent's effective filing date. Nor is there any dispute that the 2016 Renewliner is, in fact, materially identical to the current version of Renewliner accused of infringing the '007 Patent. Because TSS has met its burden of establishing anticipatory prior art, the burden falls on CMS to establish that one of two exceptions apply. CMS cannot meet its burden. Indeed, CMS has failed to come forward with evidence that Turner Fiberfill ("Turner," the manufacturer of 2016 Renewliner) derived 2016 Renewliner from CMS (Section 102(b)(1)(A)) or that CMS made any "public disclosure" of its invention prior to the first Renewliner sales (Section 102(b)(1)(B)). TSS therefore respectfully requests that the Court reconsider its prior Order and grant TSS summary judgment of invalidity of the '007 Patent.

## II. BACKGROUND

### A. Relevant Procedural History

On January 16, 2024, TSS filed a Motion for Summary Judgment that the sole asserted patent in this case—U.S. Patent No. 11,078,007 ("the '007 Patent")—was invalid. *See generally* Dkts. 141, 152, 173-3. TSS argued, *inter alia*, that in April 2016 (prior to the June 2016 effective filing date of the '007 Patent), its manufacturing partner, Turner, manufactured Renewliner and sold the product to a third party, Juicero. TSS also argued that the 2016 Renewliner was materially identical to the product that CMS now alleges infringes the '007 Patent. Consequently, the Renewliner product sold in April 2016 constituted invalidating prior art under Section 102(a)(1). CMS opposed the motion, arguing in relevant part that it was entitled to the safe harbor provisions of Section 102(b)(1)(B) based on a February 2016 sale of its product to Dinner Thyme and certain samples that CMS provided to TSS and a TSS customer in December 2015 and January 2016. *See* Dkt. 149 at 13-14 (discussing February 2016 Dinner Thyme sale); Dkt. 170 at 8 (discussing samples sent to TSS and its customer).

On May 10, 2024, the Court denied TSS's motion, holding that "the February 2016 purchase order was a public disclosure by the inventor." *See* Dkt. 183 at 2. The Court stated that "§ 102(a) itself equates an invention's being on sale with a 'public' disclosure." *See id.*

### B. The Federal Circuit's *Sanho* Decision

On July 31, 2024, the Federal Circuit issued a decision in *Sanho Corp. v. Kaijet Tech. Int'l Ltd.*, 108 F.4th 1376. As discussed below, the Federal Circuit held that a non-confidential, private sale (as well as the private provision of product samples) is not a public disclosure under Section 102(b).

In *Sanho*, Kaijet Technologies ("Kaijet") filed a petition for *inter partes* review challenging the validity of Sanho's U.S. Patent No. 10,572,429 ("the '429 Patent"). Kaijet's key reference, Kuo, was filed on December 13, 2016, four months before the April 2017 priority date of Sanho's patent. Sanho, however, argued that Kuo did not qualify as prior art because, before Kuo's December 2016 filing date, the '429 Patent's inventor had privately sold a product that allegedly

1  embodied the claimed invention. Sanho argued that this constituted a public disclosure under

2  Section 102(b):

3  > Specifically, Sanho contended that the inventor's sale of the so-called HyperDrive device constituted a public disclosure by the inventor of the relevant subject matter in Kuo. Mr. Liao, the inventor of the '429 patent, offered to sell the HyperDrive to Sanho's owner on November 17, 2016. After obtaining a HyperDrive sample, Sanho placed an order for 15,000 HyperDrive units on December 6, 2016, that was accepted by Mr. Liao's company, GoPod Group Ltd. (constituting an actual sale). Sanho made no showing that the sale of the HyperDrive that predated Kuo's effective filing date was publicized in any way, or that there were any such sales other than the private sale of HyperDrives from the inventor to Sanho. There is also nothing in the record to indicate that the order for 15,000 HyperDrives was fulfilled before Kuo's effective filing date, or what became of those devices.

10  *Sanho*, 108 F.4th at 1379. On appeal, Sanho argued that the inventor's sale to Sanho was a public

11  disclosure. *See id.* The Federal Circuit rejected this argument, explaining that:

12  > Sanho's first problem is that the words "publicly disclosed" are not the same as the word "disclosed." The use of the two different phrases—"disclosed" and "publicly disclosed"—suggests that Congress intended the phrases to have different meanings. A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant. We think that the added word, "publicly," both negates Sanho's consistent usage argument and suggests that the sorts of disclosures that qualify for the exception in section 102(b)(2)(B) are a narrower subset of "disclosures" (i.e., the disclosures that are "public").

17  *Id.* at 1381-82 (*citing Hibbs v. Winn*, 542 U.S. 88, 101 (2004) and *Helsinn Healthcare S. A. v. Teva*

18  *Pharms. USA, Inc.*, No. 2016-1284, 2018 WL 1583031, at *4 (Fed. Cir. Jan. 16, 2018) (O'Malley,

19  J., concurring in denial of rehearing *en banc*)).[1] The *Sanho* court further reasoned that:

20  > Section 102(b) appears to have as its purpose protection of an inventor who ***discloses his invention to the public*** before filing a patent application because the inventor has made his invention available to the public—a major objective of providing patent protection in the first place.
>
> . . .
>
> In light of this purpose, ***"publicly disclosed by the inventor" must mean that it is reasonable to conclude that the invention was made available to the public***. If the subject matter of the invention were kept private, the inventor would not have disclosed the invention to the public. [Section 102(b)] thus works to protect

---

[1] TSS also relied on Judge O'Malley's concurrence in *Helsinn* in its previous Motion, which the Court declined to follow. *See* Dkt. 173-3 at 7-8; Dkt. 183 at 3.

inventors who share their inventions with the public from later disclosures made by others.

*Sanho*, 108 F.4th at 1382 (emphasis added). The court concluded that Section 102(b)'s safe harbor provisions "operate to ensure that, if the subject matter is sufficiently disclosed 'to the public,' a patentee will not be prevented from obtaining a patent merely because a third party disclosed what was already publicly disclosed by the inventor." *Id.* at 1383.

Thus, the Federal Circuit rejected a similar argument to the one that CMS made here– *i.e.*, that placing its product "on sale" and distributing samples constitute public disclosures. The Federal Circuit rejected the notion that "the phrase 'publicly disclosed' . . . should be construed to include all the 'disclosures' described in Section 102(a)(1), including situations in which the invention was 'on sale.'" *Id.* at 1381; *see also id.* at 1382 ("If all prior art events—i.e., all 'disclosures'—recited in § 102(a) were already public disclosures, the word 'publicly' in § 102(b)(1)(B) would be redundant, and there would be no need for a separate rule for third-party disclosures.").

Applying these principles, the Federal Circuit held that the inventor's provision of samples and its sale to Sanho did not publicly disclose the claimed subject matter because there was also no evidence that the samples or sales were publicized. *See id.* Thus, the Federal Circuit held that there was no public disclosure under Section 102(b). *See id.* at 1385.

**C.  Development History of 2016 Renewliner**

The Court's discussion in its recent Order denying CMS's Motion for Summary Judgment (Dkt No. 236 at 5-10) provides a summary of the parties' business relationship and TSS's independent development of its Renewliner product. TSS also refers the Court to TSS's discussion of Renewliner's development history detailed in Dkt. 188-2 at 2-7.

In summary, TSS and CMS began working together in 2014 to discuss different packaging solutions that could be used in cold-chain products. *Id.* at 5. These initially included cotton and recyclable denim products. *See* Dkt. 185-3 at 3 (¶ 4); Dkt. 185-5 at 23:12–24:24. The initial product on which TSS and CMS collaborated was a denim product. *See* Dkt. 189-4 at 2-3.

1    Separately, however, in 2015 TSS began developing an all-thermoplastic solution that
2  could be recycled. *See* Dkt. 236 at 5-6. By at least June 2015, TSS spoke with its film supplier,
3  Timothy Wilson, about a thermoplastic (PET) fibrous batt insulation with thermoplastic (PET)
4  film adhered to both sides of the insulation. *See* Dkt. 189-33 ¶¶ 2-3; Dkt. 189-6 at 33:8-18; Dkt.
5  236 at 5-6. TSS recognized at the time that such a product would advantageously be curbside
6  recyclable, and TSS was aware that its customers would find such a solution attractive. *See* Dkt.
7  236 at 8; Dkt. 189-31 at 2.

8    TSS then experimented with different ways to adhere film to the insulation, and ultimately
9  adopted its film supplier's recommendation of using a film with a heat seal coating. *See* Dkt. 236
10 at 6; Dkt. 189-33 ¶¶ 2-4. TSS independently sourced the film it would use. *See* Dkt. 236 at 8;
11 Dkt. 189-33 ¶ 5; Mays Decl. Ex.[2] 1. Next, TSS ordered insulation samples from CMS to test
12 whether TSS's independently sourced film could adhere to CMS's insulation. TSS collaborated
13 with CMS on the appropriate density and thickness of the samples. The samples that TSS
14 eventually ordered from CMS were "unfaced" – meaning they did not have any film on any sides.
15 *See* Dkt. 236 at 9; Dkt. 184-4 at 54:9-55:24, 57:18-58:9; Dkt. 189-16 at 22:8-18, 66:9-17; Dkt.
16 185-9 at 29:9-20. During his deposition, Sal Cardinale of TSS described how he applied TSS's
17 independently sourced film to CMS's unfaced insulation. *See* Dkt. 184-4 at 48:24-49:14, 52:21-
18 57:03 (describing how TSS and Mr. Cardinale tested applying film to both sides of CMS's
19 thermoplastic batt and tested the resulting product's insulative properties), and 58:2-22 (TSS's
20 film came from TSS's own vendor, Timothy Wilson, not CMS).

21   Mr. Cardinale testified that there was never any communication from CMS to TSS
22 conveying the idea of laminating film on both sides of the insulation. *See id.* at 58:23-59:10.
23 Rather, Mr. Cardinale testified that he supplied adding film on both sides of the core to CMS. *See*
24 *id.* at 58:11-22. Further, TSS encouraged CMS to use film on both sides and provided instructions
25 to CMS about the proper way to adhere the film to insulation. *See* Dkt. 236 at 7-8; Dkt. 189-34 ¶¶

---

[2] "Mays Decl. Ex." refers to exhibits attached to the Declaration of Christopher D. Mays filed herewith.

| DEFENDANT'S MOTION FOR RECONSIDERATION OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY; MEMORANDUM OF POINTS & AUTHORITIES | -5- | CASE NO. 3:22-cv-03141-LB |

8-10; Dkt. 188-5 at 2-3; Dkt. 189-33 ¶ 6; Dkt. 188-2 at 9; Dkt. 189-12 at 2-3. By February 2016, TSS had worked out the specifics of Renewliner.

### III. ARGUMENT

As discussed below, *Sanho* provided a new statutory interpretation of "public disclosure" as it appears in Section 102(b). It is therefore appropriate for the Court to reconsider its prior order accordingly. Here, there is no material factual dispute that Renewliner is anticipatory prior art to CMS's '007 Patent for which no Section 102(b) exception applies.

#### A. The Court Should Reconsider its Prior Order.

FED. R. CIV. P. 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." CIVIL L.R. 7-9(b)(2) permits reconsideration of a prior order when, for example, "the emergence of new material facts *or a change of law* occurring after the time of such order" occurs.

Here, *Sanho* constitutes a meaningful change in the law by providing a new statutory interpretation of "publicly disclosed" under Section 102(b). The Federal Circuit's interpretation follows TSS's prior arguments. *Compare, e.g.,* TSS's arguments in Dkt. 173-3 at 7-8 (discussing Judge O'Malley's concurrence in *Helsinn*) *with* the Court's Order in Dkt. 183 at 3 (declining to follow the same) *and Sanho*, 108 F.4th at 1382 (Fed. Cir. 2024) (relying on Judge O'Malley's concurrence). As discussed above, *Sanho* narrowly construed the meaning of a "public disclosure," and forecloses CMS's prior arguments. TSS respectfully requests that the Court reconsider its previous order.

#### B. 2016 Renewliner is Anticipatory Prior Art.

##### 1. 2016 Renewliner Qualifies as Prior Art Under Section 102(a)(1).

As an initial point, the Court appears to have already resolved whether 2016 Renewliner was anticipating art. In its February 2024 Order, the Court noted that "Thermal Shipping met its initial burden with evidence that its February 2016 Renewliner sale was anticipating art: Cellulose

1  alleges that the Renewliner satisfies all claims of the '007 patent." Dkt. 160 at 7.  However, to aid
2  the Court's review, TSS will briefly recap the relevant standards and facts.

3        A patent claim is invalid if the claimed invention was "patented, described in a printed
4  publication, or in public use, on sale, or otherwise available to the public before the effective filing
5  date of the claimed invention."  35 U.S.C. § 102(a)(1).  The requirements for the on-sale bar are
6  "that the claimed invention (1) was the subject of a commercial offer for sale[] and (2) was ready
7  for patenting."  *See* Dkt. 160 at 5 (quoting *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1372
8  (Fed. Cir. 2016)).  An offer for sale "does not have to be accepted to implicate the on sale bar."
9  *Id.* (quoting *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328 (Fed. Cir. 2001)).  That said,
10 "the acceptance of [a] purchase order prior to [the critical date] makes it clear that such an offer
11 had been made, and there is no question that the sale was commercial rather than experimental in
12 character."  *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998).  Also importantly, the delivery date
13 of the anticipatory product is immaterial even if delivery occurs after the critical date.  *See STX,*
14 *LLC v. Brine, Inc.*, 211 F.3d 588, 590, (Fed. Cir. 2000) ("The fact that delivery was set for dates
15 after the critical date is irrelevant to the finding of a commercial offer to sell.")

16       Here, the undisputed effective filing date of the '007 Patent is June 27, 2016.  *See* Dkt. 1-
17 1 (cover page of '007 Patent stating "Filed: Jun. 27, 2016"); Dkt. 221-6 at 85:3-7 (CMS's expert
18 agreeing that that "the effective date of the patent" is "June 2016.").  But 2016 Renewliner was on
19 sale by April 2016, before the '007 Patent's effective filing date.  *See* Dkt. 152 at 1, 8-10; Dkt.
20 173-3 at 6.  This is corroborated by a Thermal Shipping invoice showing a completed sales
21 transaction to Juicero (listing Turner as the manufacturer):



Dkt. 148-8. This purchase order includes a specific quantity, a specific price, shipment provisions, and payment terms. *See id.* Thus, the purchase order shows that 2016 Renewliner is "on sale" prior art.

Nor is there any dispute that 2016 Renewliner anticipates the '007 Patent. In its original Motion, TSS presented undisputed evidence from its expert and others that 2016 Renewliner is materially identical to the current version of Renewliner that CMS accuses of infringement. *See* Dkt. 141 at 3-4; Dkt. 152 at 1. <u>First</u>, Turner's CEO testified that Renewliner has not meaningfully changed since 2016. *See* Dkt. 141-8 at 32:14-33:07. <u>Second</u>, TSS's expert (Dr. Parachuru), was provided with samples both from the 2016 Turner Renewliner and the current version accused of infringing the '007 Patent. *See* Dkt. 141-7 ¶¶ 8-12. After performing several tests, Dr. Parachuru verified Turner's CEO's testimony that the two versions of Renewliner do not contain meaningful differences. *See id*. <u>Finally</u>, CMS did not challenge Dr. Parachuru's opinions or offer rebuttal expert testimony. *See generally* Dkt. 149. There is therefore no material dispute of fact that 2016 Renewliner is prior art that anticipates the '007 Patent. *See CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK, 2013 WL 6673676, at *4 (N.D. Cal. Dec. 18, 2013) ("[T]hat which infringes, if later, would anticipate, if earlier,") (quoting *Peters v. Active Mfg.*, 129 U.S. 530, 537 (1889)); *FMC Techs., Inc. v. OneSubsea IP UK Ltd.*, 412 F. Supp. 3d 706, 716 (S.D. Tex. 2019) ("FMC has presented uncontroverted summary judgment evidence as to . . . on sale bar. Specifically, FMC has presented competent summary judgment evidence that the [prior art product], which is materially identical to the [accused product], was the subject of a commercial sale to Shell before the effective filing date").

### 2. Section 102(b)(1)(A) Does Not Apply Because TSS and Turner Did Not Derive 2016 Renewliner from the '007 Patent's Inventors.

Section 102(b)(1)(A) includes an exception to a prior art reference if that reference "was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." The patentee—here, CMS—bears the burden of proving that this exception applies. *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1380 (Fed. Cir. 2015) (patentee has burden to "argue or produce evidence"

that a reference "is not prior art"); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (Patentee "has the burden of going forward with evidence either that the prior art . . . is not prior art"). That said, CMS has failed to carry its burden of showing a material dispute of fact that this exception applies.

To show derivation, CMS must come forward with evidence showing **both** that TSS obtained the subject matter of the '007 Patent from CMS **and** that Turner obtained that subject matter from TSS. CMS has shown neither. Indeed, as discussed above in Section III.C and in the Court's recent Order on joint inventorship (Dkt. 236 at 5-10), the undisputed evidence shows that TSS independently developed its ideas for 2016 Renewliner. Likewise, Turner's CEO had no recollection (or other evidence) showing its specification for Renewliner came from TSS. *See* Dkt. 221-7 at 22:3-8 (Turner's agreement with TSS did not include specifications), 23:12-24:11, 31:17-33:1. On the contrary, Turner's CEO testified that he had been in the business of selling thermoplastic fibrous insulation products since at least 1998. *See id.* at 12:22-13:23. Under these facts, there is no material dispute that Turner did not derive (directly or indirect) 2016 Renewliner from CMS.

### 3. Section 102(b)(1)(B) Does Not Apply Because CMS Did Not Publicly Disclose Its Invention.

Section 102(b)(1)(B) provides a second exception from anticipatory prior art where there has been an intervening "public disclosure" by the inventor. This exception states:

> Disclosures made 1 year or less before the effective filing date of the claimed invention.—A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if . . . the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor.

*Id.* Under *Sanho*, there is no material dispute that this exception does not apply.

CMS contends that it is entitled to Section 102(b)(1)(B)'s exception based on a sale it made in February 2016 (to TSS on behalf of TSS's customer, Dinner Thyme) as well as samples it sent to TSS and a TSS customer (also at TSS's request) named Nurture Life. *See* Dkt. 149 at 13-14 (discussing February 2016 Dinner Thyme sale); Dkt. 170 at 8 (discussing samples sent to TSS and

1   its customer). CMS contends that these constitute "public disclosures" of the claimed invention
2   under the exception. Under *Sanho's* interpretation, however, CMS's argument fails.

3   As to the Dinner Thyme sale, CMS has not come forward with any evidence showing it
4   was anything but a private sale. *See Sanho*, 108 F.4th at 1381-1384 ("publicly disclosed" does not
5   include situations where invention was on private commercial sale). CMS points to several private
6   communications between only CMS and TSS regarding this prospective sale. *See* Dkt. 170 at 5.
7   CMS does not even show that it ever communicated with Dinner Thyme directly about this sale.
8   Nor is there any evidence that CMS, TSS, Dinner Thyme, or anyone else made any public
9   statements about this sale prior to 2016 Renewliner's prior art date. On the contrary, the
10  undisputed evidence shows that CMS shipped its product to Dinner Thyme **after** 2016
11  Renewliner's prior art date. *Compare* Dkt. 148-8 (Turner invoice showing "received in full" date
12  of April 22, 2016); *with* Dkt. 141-6 (Dinner Thyme invoice # 12964) and Dkt. 173-9 (CMS's Chris
13  Benner discussing anticipated shipment date of April 27, 2016, for invoice # 12964). Privately
14  selling a product is alone insufficient under *Sanho*, and CMS points to no other evidence about
15  this sale rendering it a public disclosure. *See Sanho*, 108 F.4th at 1379 ("There is also nothing in
16  the record to indicate that the order for 15,000 HyperDrives was fulfilled before Kuo's effective
17  filing date, or what became of those devices.").

18  CMS's provision of samples to TSS and its customer fare no better. As was also discussed
19  in *Sanho*, the private provision of a sample is also not a public disclosure. *See id.* at 1379 ("***After***
20  ***obtaining a HyperDrive sample***, Sanho placed an order for 15,000 HyperDrive units . . . that was
21  accepted by [inventor's] company) (emphasis added). Here, like the inventor in *Sanho*, the
22  evidence shows on two occasions **_TSS_** contacted CMS and requested that samples be sent to TSS
23  (and in one instance, Nurture Life). *See* Dkt. 170-7 at CMS0032638 (December 2015 email from
24  TSS to CMS requesting samples for Nurture Life); Dkt. 169-5 at CMS002699 (December 2015
25  email from TSS requesting liner samples); Dkt. 169-6 at CMS0015267 (January 2016 email from
26  TSS requesting additional samples); Dkt. 170-10 (showing TSS as "Ship To" address for samples).
27  This does not show a public disclosure—at most, it shows that TSS privately requested samples
28  for "evaluation and testing," of the CMS product. *See* Dkt. 170 at 8. But *Sanho* also involved

1  samples sent for evaluation and the Federal Circuit held that such provision was not a public
2  disclosure. *Sanho*, 108 F.4th at 1379 (order for product placed after sample received). Also like
3  in *Sanho*, CMS fails to show what happened to these samples after they were sent, that they were
4  included in a downstream public disclosure, or that the prospective customers subsequently
5  incorporated the insulation into any public-facing products. *See id.* ("There is also nothing in the
6  record to indicate . . . what became of those devices.").

7  Also critically, there is no evidence that any of the foregoing activities were publicized or
8  that CMS had made this product generally available to the public. For example, archived snapshots
9  of CMS's website beginning late 2015 and extending through August 2016 show that CMS did
10 not market, advertise, or otherwise disclose its all-PET product on its packaging insulation web
11 page, but marketed only an insulation product made of paper. *See* Mays Decl. ¶¶ 3-5 and Exs. 2-
12 4. Lacking any evidence of a public disclosure, the exception does not apply.

13 **IV.    CONCLUSION**

14 The foregoing demonstrates that 2016 Renewliner is anticipating prior art to the '007 Patent
15 for which no exception applies. For these reasons, TSS respectfully asks this Court to reconsider
16 its prior Order (Dkt. 183) and grant summary judgment that the '007 Patent is invalid under 35
17 U.S.C. § 102.

18 Dated: September 27, 2024                    WILSON SONSINI GOODRICH & ROSATI
                                                Professional Corporation
19

20
                                                By:  */s/ Ryan R. Smith*
21                                                     Ryan R. Smith
                                                       *rsmith@wsgr.com*
22
                                                Attorneys for Defendant
23                                              SC MARKETING GROUP, INC.